# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES SNELL, an individual on behalf of himself and others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**G4S SECURE SOLUTIONS (USA) INC., and DOES 1 through 50, inclusive,**<br><br>Defendants. | 1:19-cv-00802-LJO-SAB<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6).**<br>**(ECF NO. 7)** |

## I. <u>INTRODUCTION</u>

In June 2019, Plaintiff James Snell ("Snell") brought this putative class action against his former employer and a security company, Defendant G4S Secure Solutions (USA), Inc. ("G4S"), for violations of the Fair Credit Reporting Act ("FCRA"). ECF No. 1 ¶¶ 5, 10. Specifically, Snell claims that the authorization form that G4S provided him to sign in order to perform employment-related background checks fails to satisfy the clear, conspicuous, and standalone requirements of 15 U.S.C. § 1681b(b)(2)(A). *Id.* ¶¶ 5, 16. Contending that the Complaint fails to allege sufficient facts to establish such statutory violations, G4S filed the instant Motion to Dismiss (the "Motion") under Federal Rule of Civil Procedure 12(b)(6) on August 2, 2019. *Id.* No. 7. Snell filed his Opposition on August 20, and G4S replied on August 27. *Id.* Nos. 10-11.

Pursuant to Local Rule 230(g), the Court finds this matter suitable for a decision on the papers. Having considered all of the arguments raised in the parties' submissions, relevant law, and record in this case, the Court DENIES the Motion.

## II. BACKGROUND

The following facts are drawn from the Complaint and are accepted as true only for the purposes of this Motion to Dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). In October 2018, Snell started to work for G4S as a security officer. ECF No. 1 ¶¶ 2, 5, 11.

To complete his employment application to work for G4S, Snell signed a Disclosure and Authorization to Obtain Consumer Report and/or Investigative Consumer Report and Release form (the "disclosure form") authorizing G4S to obtain his consumer report and to verify his background and experience. *Id.* ¶ 4. Snell now claims that the disclosure form he signed is analogous to the ones in *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019), and *Syed v. M-I, LLC*, 853 F.3d 492, 500 (9th Cir.), which the Ninth Circuit found to be in violation of 15 U.S.C. § 1681b(b)(2)(A)(i). *Id.* ¶¶ 5, 43-45. Section 1681b(b)(2)(A)(i) requires that a FCRA disclosure form consists solely of the disclosure without any extraneous information—this is known as the "standalone requirement." *Id.* ¶¶ 5, 42, 44. Section 1681b(b)(2)(A)(i) also requires a FCRA disclosure form to be clear and conspicuous to a reasonable consumer—this is known as the "clear and conspicuous requirement." *Id.* ¶¶ 42, 45.

The Complaint asserts two causes of action. The first one is premised on the theory that G4S willfully violated the standalone, clear, and conspicuous requirements of the FCRA by including in its disclosure form not only a FCRA disclosure but also other disclosure requirements under California, Minnesota, and Oklahoma laws, which confused Snell as a reasonable consumer. *Id.* ¶¶ 26, 42-46; *id.*, Exh. 1. The second cause of action is dependent on the first. Snell claims that because G4S violated Section 1681b(b)(2)(A)(i), it did not acquire a valid consent from Snell to obtain his consumer report in violation of Section 1681b(b)(2)(A)(ii). *Id.* ¶¶ 54-56. By bringing this putative class action, Snell seeks statutory damages under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under § 1681n(a)(2), and attorney's fees and costs under § 1681n(a)(3) for himself and all the putative class members. *Id.* at 12.

# III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the opposing party's pleadings. Dismissal of an action under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[a]ll factual allegations in the complaint are accepted as true, and the pleadings construed in the light most favorable to the nonmoving party." *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1018 (9th Cir. 2014) (internal quotation marks and internal citation omitted). "In reviewing the sufficiency of a complaint, [courts are limited] to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (internal citations omitted).

Rule 8(a)(2) requires a complaint to provide "only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A sufficiently pled claim "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Id.* (internal citations omitted).

A claim is sufficiently pled when it is "plausible on its face," meaning that there are enough facts alleged to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 556

U.S. at 678-79.

## IV. ANALYSIS

"The Fair Credit Reporting Act has as one of its purposes to 'protect consumer privacy.'" *United States v. Bormes*, 568 U.S. 6, 7 (2012) (internal citations omitted). The FCRA "provides that '[a]ny person who *willfully* fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]' for, among other things, either 'actual damages' or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (internal citation omitted) (emphasis added).

G4S now seeks to dismiss this action under Rule 12(b)(6) on two grounds. First, G4S argues that Snell fails to plead sufficient facts to show that its alleged violation of Section 1681b(b)(2)(A)(i) was willful. Second, G4S argues that Snell fails to allege sufficiently how the disclosure form is not clear and conspicuous. Both grounds go to Snell's first cause of action, but if the first claim fails, the second claim also fails as the later depends on the former. The Court addresses each issue in turn.

**A.    Willful Noncompliance Under 15 U.S.C. § 1681n**

"Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

    (i) a *clear and conspicuous* disclosure has been made in writing to the consumer at any time

    before the report is procured or caused to be procured, in a document that consists *solely of the*

    *disclosure*, that a consumer report may be obtained for employment purposes; and

    (ii) the consumer has authorized in writing (which authorization may be made on the document

    referred to in clause (i)) the procurement of the report by that person."

15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) (emphasis added).

"Any person who *willfully* fails to comply with any requirement imposed under this subchapter," such as 15 U.S.C. § 1681b(b)(2)(A), "with respect to any consumer is liable to that consumer . . . ." 15

4

U.S.C. § 1681n(a) (emphasis added). "The Supreme Court has clarified that, under Section 1681n, willfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'" *Syed*, 853 F.3d at 503 (citing to *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56-57 (2007) (internal citation omitted). If G4S reads and applies the FCRA in an erroneous manner, that error itself is not sufficient to establish recklessness or knowing violation of the law under Section 1681n(a). *See Safeco*, 551 U.S. at 69-70. As the Supreme Court held, "a company subject to FCRA does not act in reckless disregard of it unless the action is *not only* a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69 (emphasis added). To paraphrase this in the Supreme Court's terms, the test is whether G4S's reading of Section 1681b(b)(2)(A)(i), "albeit erroneous, was not objectively unreasonable." *Id.* Notwithstanding this, willfulness may be alleged generally at the pleading stage. Fed. R. Civ. P. 9(b). Taking *Safeco* and Rule 9(b) together, Snell may allege knowing or reckless violation of the FCRA generally insofar as the allegations are consistent with the willfulness test under *Safeco*.

Here, Snell attaches a copy of the disclosure form that he signed in October 2018 to show that it contains not only the disclosure information required by the FCRA, but also extraneous information regarding disclosure requirements under various state laws in violation of the standalone requirement under Section 1681b(b)(2)(A)(i). ECF No. 1, Exh. 1. Snell pleads that "[t]he violations of the FCRA were willful based on the clear statutory text, case law guidance, and regulatory guidance." *Id.* ¶ 46. Snell then cites to the plain language of Section 1681b(b)(2)(A)(i), stating that a document must consist "solely of the disclosure," and informal opinion letters from the Federal Trade Commission ("FTC") to show that it is unambiguous under the law that "no extraneous information should be included in the FCRA disclosure," and that G4S knowingly or recklessly violated the law. *Id.* ¶¶ 25-26, 44, 47-48. Based on these allegations, the Court is persuaded that Snell has sufficiently alleged plausible claims for violations of the FCRA, but G4S disagrees, ECF No. 7 at 4-9.

5

G4S does not dispute that *Gilberg*, which was published in January 2019, is applicable here insofar as what constitutes a standalone disclosure under the FCRA. ECF No. 7 at 8. In *Gilberg*, the Ninth Circuit was presented with effectively the same disclosure document as the disclosure form here "containing extraneous information in the form of various state disclosure requirements," and it had to determine if the extraneous information was consistent with the standalone requirement of the FCRA. *Gilberg*, 913 F.3d at 1171. The Ninth Circuit reaffirmed that Section 1681b(b)(2)(A)(i) "meant what it said: the required disclosure must be in a document that 'consist[s] 'solely' of the disclosure,'" and that there was no other implicit meaning to the terms. *Id.* at 1175. For this reason, *Gilberg* found that the inclusion of the extraneous information in the disclosure document violated the standalone requirement of the FCRA and reversed the district court's finding. *Id.* at 1178.

Even though *Gilberg* was published three months after Snell was given the disclosure form to sign in October 2018, it is the default principle "that a court's decisions apply retroactively to all cases still pending before the courts." *Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011). Consistent with this well-established principle, *Gilberg* applies to the disclosure form here, whereby the inclusion of extraneous information about disclosure requirements under various state laws violates the FCRA's standalone requirement.

G4S argues, however, that notwithstanding *Gilberg*, this action is subject to dismissal because Snell has failed to sufficiently plead that it *willfully* violated the FCRA when it misconstrued the statute to allow it to include disclosure requirements under state laws. ECF No. 7 at 4-9. "[I]f a controlling precedent is determined to be *on* point, it must be followed." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) (emphasis added). It significant that *Gilberg* did not consider the willfulness requirement of Section 1681n(a) and how it would apply to the standalone requirement of Section 1681b(b)(2)(A)(i). *See Gilberg*, 913 F.3d 1169. Because *Gilberg* is not on point on the issue of willfulness, the Court must look to the Supreme Court decision in *Safeco* and the Ninth Circuit decision in *Syed* for guidance on the application of willfulness.

### 1. **Guidance from *Safeco*{.underline}**

*Safeco* is the principal and only guidance from the Supreme Court on the meaning of willfulness under Section 1681n(a). In *Safeco*, the Supreme Court consolidated two class action cases involving plaintiff insureds who purchased their auto insurance from defendant insurers, Safeco and GEICO. *Safeco*, 551 U.S. at 53-54. Based on the insureds' credit reports, which were less than perfect, the insurers charged them higher premiums than had the insureds had perfect credit reports. *Id.* at 53-54, 65-66. The FCRA required the insurers to give their insureds notice when an "adverse action" was taken "based in whole or in part on any information contained in a consumer [credit] report." 15 U.S.C. § 1681m(a). The statute defined an "adverse action" as "a denial or cancellation of, *an increase* in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for." § 1681a(k)(1)(B)(i) (emphasis added). The insureds insisted that their insurers took adverse action against them without notice in violation of the FCRA based on the premise that their insurance premiums "increased" because they were not afforded the best possible rates. *Safeco*, 551 U.S. at 53-54, 60-63.

The district courts ultimately granted summary judgments in the insurers' favor because the insureds failed to meet their evidentiary burden of demonstrating a genuine dispute of material fact that the insurers took "adverse action" against them. *Id.* The insureds appealed the rulings to the Ninth Circuit, and by the time the cases reached the Supreme Court, the primary issue, as relevant here, was whether "willfulness" under Section 1681n(a) included recklessness, which high court answered affirmatively. *Id.* at 55-56, 59, 68-69. Using this expanded definition of willfulness, the Supreme Court found (based on the evidence presented and without remanding the cases for further factual development) that the insurers' conduct did not rise to the level of recklessness. *Id.* at 69-70. GEICO's position on appeal was that there was no increase in premium because its insured's rate was the same when his credit report was considered as when his credit report was not considered. *Id.* at 65-68. On the other hand, Safeco's position on appeal was that there were no increases in premiums because it had no

7

prior dealings with its insureds, who were purchasing their auto insurance from Safeco for the first time. *Id.* at 68-70. Whereas GEICO's baseline from which to determine whether there was an increase in premium was to exclude the credit report, Safeco's baseline was to compare the premiums with prior dealings.

The Supreme Court found that GEICO had the better position and held that "the difference required for an increase can be understood without reference to prior dealing (allowing a first-time applicant to sue), and considering the credit report must be a necessary condition for the difference." *Id.* at 64. In this way, the Supreme Court's construction of what an "increase" is under Section 1681a(k)(1)(B)(i) is rather complex and not obvious from the plain language of the statute. Although the Supreme Court found Safeco's reading of the statute to be erroneous, it was "not objectively unreasonable," and therefore not reckless, because the statute was "silent on the point from which to measure 'increase,'" "no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC." *Id.* at 70-71.

While G4S's interpretation of standalone requirement is also erroneous here under *Gilberg*, G4S argues that its interpretation is not "objectively unreasonable" under *Safeco*. ECF No. 7 at 5-6. In light of *Syed* and the unambiguous language of Section 1681b(b)(2)(A)(i), the Court is unpersuaded. Because the Court must construe the Complaint in the light most favorable to Snell for purposes of this Motion, the Court finds the facts alleged here to be distinguishable from *Safeco* and more analogous to *Syed*.

### 2. Text of 15 U.S.C. § 1681b(b)(2)(A)(i)

While Safeco's reading of "increase" in *Safeco* was a close call based on a "less-than-pellucid statutory text," *Safeco*, 551 U.S. at 70, the same cannot be said here based on the plain reading of the statute. "As in all statutory construction cases, [the Court] begin[s] with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' The inquiry ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Barnhart v. Sigmon Coal Co.*, 534

8

U.S. 438, 450 (2002) (internal citations omitted).

Section 1681b(b)(2) states that a disclosure document must "consist[ ] solely of *the* disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). This text is pellucid and not silent on what kind of disclosure is permitted, even without the benefit of hindsight from *Gilberg*. The plain language of the statute clearly states a definitive article ("the") and a singular noun ("disclosure")—not any disclosure or many disclosures. "The ordinary meaning of 'solely' is '[a]lone; singly' or '[e]ntirely; exclusively.'" *Syed*, 853 F.3d at 500 (citing to American Heritage Dictionary of the English Language 1666 (5th ed. 2011)). A reasonable person who provided a disclosure form to Snell, therefore, should have interpreted "solely of the disclosure" to mean only the disclosure required by the FCRA—exclusive of any other kind of disclosure under a different federal law or state law. *Cf. Mitchell v. Winco Foods, LLC*, 379 F. Supp. 3d 1093, 1098-99 (D. Idaho 2019) (holding that a disclosure document containing two disclosures under different sections of the FCRA does not violate the standalone requirement). The plain meaning of "consist[ ] solely of the disclosure" is unambiguous. Unlike in *Safeco* where the Supreme Court found that while it disagreed with Safeco's position, it "recognize[d] that [Safeco's] reading ha[d] a foundation in the statutory text and a sufficiently convincing justification," *Safeco*, 551 U.S. at 69, G4S here points to no text in the FCRA to support its interpretation of the statutes to read "the disclosure" to include other disclosures under state laws. *See* ECF No. 7 at 6-9.

### 3. **Guidance from Existing Case Law**

In reply, as support for its "reasonable" reading of the standalone requirement, G4S cites to *Soman v. Alameda Health Sys.*, 2018 WL 6308185 (N.D. Cal. Dec. 3, 2018), where a district court found that the inclusion of disclosure requirements under state law was not a violation of the standalone requirement.[1] Reply at 5-6 (citing to *Soman*, 2018 WL 6308185 at *3-4). The standard for recklessness, however, is not whether there is a likelihood that G4S's statutory interpretation would be correct, but

---

[1] Notably, *Samon* fails to apply any of the rules of statutory construction to support its finding.

9

whether the "risk of violating the law [is] substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. Moreover, in accordance with *Syed*, district court opinions do not appear to be relevant to the analysis of objective reasonableness.

In *Syed*, the issue presented was whether the inclusion of a liability waiver in the same document as the FCRA mandated disclosure was a violation of the standalone requirement, and the Ninth Circuit concluded that such inclusion was a willful violation of the FCRA. *Syed*, 853 F.3d at 496, 507. At the time *Syed* was decided, a district court in the Ninth Circuit had found that construing the standalone requirement to permit a one-sentence liability waiver to be "included in its disclosure form, if not a part of the statutorily permitted authorization," was not a "*reckless disregard* of the requirements of the FCRA." *Peikoff v. Paramount Pictures Corp.*, 2015 WL 13650922, at *1 (N.D. Cal. Mar. 26, 2015) (emphasis added). At least one district court outside the Ninth Circuit had agreed also that reading Section 1681b(b)(2)(A)(i) to allow for the inclusion of a liability waiver in certain contexts was not a reckless interpretation of the statute. *See Landrum v. Harris Cty. Emergency Corps*, 122 F. Supp. 3d 617, 626 (S.D. Tex. 2015) (holding that "it cannot be said that it was objectively unreasonable [under the FCRA] for the company to presume the lawfulness of including a liability waiver as part of a background check disclosure document."). Yet, the Ninth Circuit did not take those district court decisions into consideration. *See Syed*, 853 F.3d 492.

Rather, the Ninth Circuit framed its analysis as follows: "No *court of appeals* has spoken to the issue of whether a disclosure document provided pursuant to Section 1681b(b)(2)(A) may permissibly include a liability waiver. Nor has an administrative agency promulgated authoritative guidance on the issue."[2] *Id.* at 504 (emphasis added). But "a 'lack of definitive authority does not, as a matter of law,

---

[2] The Ninth Circuit's language mirrors precisely the same language the Supreme Court used in *Safeco* where it states, "[b]efore these cases, *no court of appeals* had spoken on the issue, and no authoritative guidance has yet come from the FTC . . . ." *Safeco*, 551 U.S. at 70 (emphasis added).

10

immunize [a party] from potential liability' for statutory damages" under the FCRA. *Id.* (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010)). The Ninth Circuit then concluded "[d]espite the apparent dearth of guidance on the issue at the time M-I procured Syed's consumer report, M-I's inclusion of a liability waiver in the statutorily mandated disclosure document comports with no reasonable interpretation" of the standalone requirement and that M-I's interpretation was "objectively unreasonable." *Id.*

Following *Syed*'s analytical framework, district court decisions are not relevant to determining objective reasonableness; what relevant is court of appeals decisions. But even if the Court were to take *Soman* into consideration, G4S did not have the benefit of guidance from *Soman* because G4S gave Snell the disclosure form to sign approximately two months before *Soman* was issued. *Soman* is also contradicted by *Syed* and the plain language of the standalone requirement. Unlike the apparent dearth of guidance that existed in *Syed*, G4S here had the benefit of guidance from *Syed* when the disclosure form was given to Snell in October 2018. Significantly, *Syed* emphasized that the construction of "solely of the disclosure" "is not a case where we must rationalize two plainly inconsistent subsections, or smooth over a mistake in draftsmanship." *Syed*, 853 F.3d at 500 (internal quotation marks and citation omitted). "The FCRA's employment disclosure provision 'says what it means and means what it says,'" and the inclusion of extraneous information, such as, for example, "a liability waiver on the same document as a disclosure," was a willful violation of Section 1681b(b)(2)(A)(i). *Id.* at 507. The Ninth Circuit further held that there was no implicit authorization in the language of the FCRA to permit the inclusion of a liability waiver or other extraneous information. *Id.* at 502.

To support its unreasonable reading of the standalone requirement, G4S argues that *Syed*'s holding is limited to the liability waiver issue and inapplicable to this case. ECF No. 7 at 7. The Court disagrees. "*Syed*'s holding and statutory analysis were *not limited* to liability waivers; *Syed* considered the standalone requirement with regard to *any* surplusage." *Gilberg*, 913 F.3d at 1171 (internal citation omitted) (emphasis added). *Syed*'s holding is clear even without *Gilberg* having to repeat it. Even if

11

*Syed*'s holding was not crystal clear to G4S, it was clear enough that G4S's "risk of violating the law [was] substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. G4S could have easily provided the extraneous information to Snell in a separate document, but it took the risk of not doing so. *See, e.g.*, *Marquez v. Bank of America*, 2018 WL 1948864, at *5 (N.D. Cal., Apr. 25, 2018) (finding that providing a liability release document together with a separate disclosure document does not violate the standalone requirement of Section 1681b(b)(2)(A)(i)); *Coleman v. Kohl's Dep't Stores, Inc.*, 2015 WL 5782352, at *6 (N.D. Cal. Oct. 5, 2015) (holding that presenting an employee with disclosure and authorization document together with a separate release of liability document does not violate the standalone requirement of Section 1681b(b)(2)(A)(i)). By taking the risk, G4S must now accept the risk of this action.

### 4. <u>Authoritative Guidance from the FTC</u>

The Court now turns to the last prong of the analysis: whether there was any *authoritative* guidance from the FTC to support G4S's reading of the statute. On this, Snell alleges that three informal opinion letters from the FTC prohibit G4S from including extraneous information to the disclosure form under Section 1681b(b)(2)(A)(i). ECF No. 1 ¶ 48 (citing to FTC, Opinion Letter, 1997 WL 33791227, at *1 (Oct. 21, 1997) ("[The] document should include nothing more than the disclosure and the authorization for obtaining a consumer report."); FTC, Opinion Letter, 1998 WL 34323748, at *2 (Feb. 11, 1998) (disclosure may describe the "nature of the consumer reports" it covers, but otherwise should "not be encumbered with extraneous information"); FTC, Opinion Letter, 1998 WL 34323756, at *1 (June 12, 1998) (inclusion of a waiver in a disclosure form violates Section 1681b(b)(2)(A)). Contrarily, G4S argues, in reliance on the FTC's informal opinion letters from February 11 and August 5, 1998, that the FTC guidance supported its reading of the standalone requirement. ECF No. 7 at 8. However, because *Syed* did not rely on any guidance from the FTC when it concluded that there was a willful violation of the FCRA, the Court need not reach that issue here.

Nevertheless, Snell's and G4S's reliance on these informal opinion letters from the FTC to

12

support their divergent interpretations of the standalone requirement is not supported by case law. As *Syed* held, "informal opinion letters do not constitute *authoritative* guidance" from the FTC. *Syed*, 853 F.3d at 504 n.6 (emphasis added). The Ninth Circuit, therefore, declined to consider the FTC's informal opinion letters for purposes of determining willfulness under the FCRA. *Id.* The Court adheres this ruling for purposes of this Motion. Neither party has presented any authoritative guidance from the FTC to support its interpretation of the standalone requirement.

In summary, whereas *Syed* found willful violation of the standalone requirement based solely on the objectively unreasonable interpretation of "consist[ ] solely of the disclosure," *id.* at 504-05, the facts alleged here are much stronger against G4S. Not only was G4S's interpretation of the standalone requirement objectively unreasonable based on the plain reading of the statutory text, it also had the benefit of guidance from *Syed* to warn "it away from the view it took", *Safeco*, 551 U.S. at 70. For the reasons stated above, the Court finds that Snell has sufficiently stated a plausible claim against G4S for willful violation of the standalone requirement.

Importantly, "[c]ourts in this circuit have found that '[w]illfullness under the FCRA is generally a question of fact for the jury.'" *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1110-11 (N.D. Cal. 2016) (internal citations omitted). Accordingly, the question of whether G4S willfully violated the FCRA as a matter of fact is not for the Court to decide at this time.

**B.      Clear and Conspicuous Requirement of 15 U.S.C. § 1681b(b)(2)(A)(i)**

The Court now turns to G4S's 12(b)(6) challenge to the sufficiency of Snell's allegations of the clear and conspicuous requirement. Snell's first cause of action rests not only on G4S's alleged violation of the standalone requirement but also the clear and conspicuous requirement of Section 1681b(b)(2)(A)(i).

"The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process." *Syed*, 853 F.3d at 499. More

13

specifically, Section 1681b(b)(2)(A)(i) "requires employers who obtain a consumer report on a job applicant to provide the applicant with a 'clear and conspicuous disclosure' that they may obtain such a report (the 'clear and conspicuous requirement') 'in a document that consists solely of the disclosure' (the 'standalone document requirement') before procuring the report." *Gilberg*, 913 F.3d at 1171 (internal citation omitted). *Gilberg* defines "clear" under Section 1681b(b)(2)(A)(i) as "reasonably understandable" and "conspicuous" as "readily noticeable to the consumer." *Id.* at 1176.

G4S argues that, in contrast to the disclosure document in *Gilberg*, the disclosure form here is clear and conspicuous as a matter of law. ECF No. 7 at 9-13. The Court is not persuaded, however, for substantive and procedural reasons. Before turning to those reasons, the Court notes, however, that the Ninth Circuit has not decided on whether the clear and conspicuous requirement is a question of law, of fact, or of some combination of the two. *Gilberg*, 913 F.3d at 1177 ("In the TILA context, we have said that clarity and conspicuousness are questions of law. Because neither party suggests we should treat FCRA differently, we *assume* for the purposes of our analysis, *without deciding*, that clarity and conspicuousness under FCRA present questions of law rather than fact.") (internal citation omitted) (emphasis added). Some district courts in our sister circuits have found conspicuousness of Section 1681b(b)(2)(A) to be a question of law, *see*, *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 696 (S.D. Ohio 2010); *Harper v. Lindsay Chevrolet Qldsmobile, LLC*, 212 F. Supp. 2d 582, 588 (E.D. Va. 2002), but the Court is unaware of whether any other courts have concluded that clearness under the Section 1681b(b)(2)(A) is a question of law—and it is questionable whether it should only be a question of law for courts to decide, *see generally* Brandon Mohr, *Who Decides Whether Clarity is Clear?: An Analysis of TILA's Clarity of Disclosure Requirement in Actions by Consumers Against Creditor Card Companies*, 32 Pace L. Rev. 188 (2012) ("While a court might very well be equipped to determine whether relevant information is noticeable within the solicitation information, it is *not as capable* of determining whether the reasonable person would understand the terms of the agreement as they are disclosed in the solicitation materials.") (emphasis added). Following *Gilberg*, the Court assumes

14

without deciding that the clear and conspicuous requirement is a question of law only for purposes of this Motion since neither party has briefed the Court on this issue.

The Court begins with a substantive analysis of the clearness requirement. Having reviewed and compared the disclosure form attached to the Complaint and the disclosure document in *Gilberg*, the Court finds the extraneous information concerning the disclosure requirements under state laws in both documents to be closely similar. *Compare* ECF No. 1, Exh. 1 *with Gilberg*, 913 F.3d 1169, Appendix A. If anything, G4S's disclosure form contains more extraneous and confusing information about disclosure requirements under California, Minnesota, and Oklahoma laws than the disclosure document in *Gilberg*. *Id.* As *Gilberg* held, and as applicable here, "the disclosure would confuse a reasonable reader because it combines federal and state disclosures." *Gilberg*, 913 F.3d at 1177. "A reasonable reader might think that only [California, Minnesota, and Oklahoma] applicants could contact the consumer reporting agency to get a copy of the report. Such an understanding would be contrary to [the FCRA]." *Id.* The title of the disclosure form is also unclear, which states: "Disclosure And Authorization To Obtain Consumer Report and/or Investigative Consumer Report And Release." ECF No. 1, Exh. 1. A reasonable consumer may easily be confused as to whether there is a distinction between a consumer report and an investigative consumer report, which the disclosure form does not explain. Such consumer may also be confused as to whether he is authorizing G4S to obtain his consumer report or investigative consumer report, or signing a release, or consenting to all of the foregoing. For these reasons, the Court finds the disclosure form here to be even less "reasonably understandable" than the disclosure form in *Gilberg*. *See also, Downing v. Haven Health Grp. LLC,* 2019 WL 330897, at *4 (D. Ariz. Jan. 25, 2019) (holding that plaintiff has sufficiently alleged a violation of the clear and conspicuous requirement because "[p]laintiff alleges that [d]efendant larded too much extraneous information into its FCRA disclosure forms, that he was confused by this extra information, and that he wouldn't have signed the forms if he'd understood what he was doing.").

By contrast, the disclosure form here is conspicuous. The title of the disclosure form, as well as

the authorization statement, is bolded and capitalized such that Snell could see what he was signing. *See* ECF No. 1, Exh. 1. The font size and information are legible. *Id.* For these reasons, the Court finds the disclosure form to be "readily noticeable to the consumer." *See, e.g.*, *Gilberg*, 913 F.3d at 1177 (finding that the disclosure document was conspicuous because the heading of each section is capitalized, bolded and underlined and the font size is legible). Nonetheless, because the disclosure form is *not* both clear and conspicuous, G4S has failed to satisfy the clear and conspicuous requirement of Section 1681b(b)(2)(A)(i). *See, e.g.*, *id.* (holding that the district court erred in granting summary judgment because the "disclosure form was not both clear *and* conspicuous") (emphasis in original).

But even if the Court accepted G4S's argument and concluded that the disclosure form was clear and conspicuous, it cannot partially dismiss either of the two causes of action under Rule 12(b)(6) as it would be procedurally improper. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (Under Rule 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). Snell may maintain a valid claim for violation of Section 1681b(b)(2)(A)(i) if the allegations sufficiently show that G4S either violated the standalone requirement, clearness requirement, *or* conspicuousness requirement. It is G4S's obligation to satisfy all these requirements under the FCRA, so all that Snell is required to plead sufficiently here is a violation of one of the three requirements in order to maintain a valid claim against G4S under Section 1681b(b)(2)(A)(i). It follows that even if the disclosure form is clear and conspicuous, the Court cannot partially dismiss either of the two causes of action since Snell has sufficiently alleged a violation of the standalone requirement (as discussed in Section IV.A) to constitute a valid claim. *See* Fed. R. Civ. P. 9(b)(6) (to survive a 12(b)(6) motion, a plaintiff is only required to "state *a claim* upon which relief can be granted") (emphasis added); *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009) ("The

16

Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged."); *In re Netopia, Inc., Sec. Litig.*, 2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005) ("By its own terms, there does not appear to be any way to grant partial dismissal of a claim under Fed. R. Civ. P. 12(b)(6).").

### V. CONCLUSION AND ORDER

In light of the foregoing, the Court finds G4S's Motion to Dismiss to be unmeritorious. Snell has sufficiently stated a plausible claim that G4S knowingly or recklessly violated the standalone requirement, as well as the clear and conspicuous requirement, of the FCRA. Accordingly, the Motion is DENIED.

IT IS SO ORDERED.

Dated: **December 19, 2019**        /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE